UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

---------------------------------------------------------------x
                            :

In re:                        :   Chapter 11
                          :

SYRATECH CORPORATION,      :   Case No. 05- 11062 (RS)
WALLACE INTERNATIONAL DE P.R., INC.,  :
and CHI INTERNATIONAL, INC.     :
                          :   Jointly Administered
                 Debtors.    :
---------------------------------------------------------------x

ORDER UNDER 11 U.S.C. §§ 105(a), 363, 365, AND 1146(c) AND FED. R.
BANKR. P. 2002, 6004 AND 6006 AUTHORIZING AND APPROVING: (I)
ASSET PURCHASE AGREEMENT; (II) SALE OF CERTAIN OF THE
DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS,
INTERESTS AND ENCUMBRANCES; (III) ASSUMPTION AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND
UNEXPIRED LEASES; AND (IV) CERTAIN RELATED RELIEF

Upon the motion, dated March 10, 2005 (the "Motion"), of Syratech Corporation

("Syratech"), Wallace International de P.R., Inc. and CHI International, Inc., as debtors and

debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for entry of

orders: (a) establishing bidding procedures for the sale of certain of the Debtors' assets,

(b) authorizing the Debtors to pay a break-up fee and expense reimbursement, if required;

(c) scheduling a hearing to conduct an auction and approve the sale of the assets; and

(d) approving the sale of the assets to the highest bidder; and this Court having entered an order

on March 22, 2005 (the "Procedures Order") approving, among other things, certain bidding

procedures (the "Bidding Procedures"), scheduling an auction of the assets of Syratech's

Silvestri division (the "Silvestri Assets") for April 19, 2005 (the "Auction") and approving the

form and manner of notice of the Auction and sale of the Silvestri Assets (the "Sale"); and

whereas the Debtors' disclosure statement, which was approved by this Court on March 30, 2005, discloses that the Sale will enhance the Debtors' ability to confirm and consummate their proposed plan of reorganization; and the Debtors having filed that certain Asset Purchase Agreement by and among Gift Acquisition, L.L.C. and Syratech, dated as of March 24, 2005, which served as the "stalking horse bid" at the Auction (the "Stalking Horse Bid"); and after due notice, at the Auction on April 19, 2005, no bids other than the Stalking Horse Bid submitted by Gift Acquisition, L.L.C. (the "Purchaser"), as set forth in that certain Asset Purchase Agreement by and among the Purchaser and Syratech (the "Seller") dated as of March 24, 2005 which comprised the Stalking Horse Bid (as modified by the agreement attached hereto, as described below, the "Purchase Agreement" and, together with certain ancillary agreements identified in the Purchase Agreement, the "Transaction Agreements") having been received by the Debtors; and in accordance with the Bidding Procedures; and the Debtors, in consultation with the Committee (hereinafter defined) having determined that the Purchaser has submitted the highest and best offer for the Silvestri Assets designated in the Purchase Agreement to be acquired by the Purchaser (the "Acquired Assets"); and a hearing having been held on April 19, 2005 (the "Sale Hearing"); and notice of the Bidding Procedures, the Auction, the Sale Hearing and the Sale having been provided in accordance with the terms of the Procedures Order and such notice being adequate and sufficient; and all interested parties having been afforded an opportunity to be heard with respect to the Motion and all relief related thereto; and the Court having reviewed and considered: (i) the Motion; (ii) the objections thereto, if any; and (iii) the arguments of counsel made and the evidence proffered or adduced at the Sale Hearing; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

*no objections were filed or made at the April 19 hearing,

FOUND AND DETERMINED THAT:[1]

A.      This Court has jurisdiction over the Motion under 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A).  Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

B.      The statutory predicates for the relief sought in the Motion are sections 105(a), 363, 365 and 1146(c) of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

C.      This Court entered the Procedures Order on March 22, 2005, and the Procedures Order has become a final and non-appealable order.

D.      As evidenced by the certificates of service filed with this Court and based on representations of counsel at the Sale Hearing: (i) due, proper, timely, adequate and sufficient notice of the Bidding Procedures, the Auction, the Sale Hearing, the Sale (including without limitation, the assumption and assignment of the unexpired leases and executory contracts to be assumed pursuant to the Purchase Agreement (collectively, the "Assumed Agreements")), and the form of this Order has been provided in accordance with the Procedures Order, the Bidding Procedures, sections 102(1), 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006; (ii) two parties to Assumed Agreements, Sally Hunter and Kelly Paulk, were not served with the Bidding Procedures but have consented in writing to the assumption and assignment of their respective Assumed Agreements; (iii) such notice was good, sufficient and appropriate under the circumstances; and (iv) no other or further notice of the Bidding Procedures, the Auction, the Sale Hearing, the Sale or the transactions contemplated by the

---

[1] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.

Purchase Agreement (including, without limitation, the assumption and assignment of the

Assumed Agreements) or the entry of this Order, is or shall be required.

     E.    A reasonable opportunity to object and be heard with respect to the Sale and the

form of this Order has been afforded to: (i) the Office of the United States Trustee for the District

of Massachusetts; (ii) counsel to the Gift Acquisition LLC; (iii) counsel to the Official

Committee of Unsecured Creditors appointed in these cases (the "Committee"); (iv) counsel to

the administrative agent for the Debtors' post-petition senior secured lenders; (v) all entities

known to have expressed an interest in acquiring any of the Acquired Assets; (vi) all entities

known to have asserted any Lien (as defined below) in or upon any of the Acquired Assets; (vii)

all federal, state and local taxing authorities that have jurisdiction over the Acquired Assets;

(viii) all regulatory authorities or recording offices that have a reasonably known interest in the

relief requested in the Motion; (ix) all governmental agencies having jurisdiction over the

Acquired Assets with respect to environmental laws; (x) parties to governmental approvals or

permits; (xi) the United States Attorney's office and the attorneys general of all states in which

the Acquired Assets are located; (xii) the Securities and Exchange Commission; (xiii) all non-

debtor parties to the Assumed Agreements; and (xiv) all other parties that had filed a notice of

appearance and demand for service of papers in these bankruptcy cases under Bankruptcy Rule

2002 as of the date of the Motion.

     F.    The Seller may sell the Acquired Assets free and clear of all liens, claims,

encumbrances and interests (collectively, "Interests") because each entity, including the Debtors'

postpetition secured lender CapitalSource Finance LLC (the "DIP Lender"), with a security

interest in any Acquired Assets to be transferred pursuant to the Transaction Agreements,

including the Assumed Agreements: (i) has consented to the Sale (including the assumption and

assignment of the Assumed Agreements) or is deemed to have consented to the Sale; (ii) could

be compelled in a legal or equitable proceeding to accept money satisfaction of such interest; or

(iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code, and

therefore, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the

Bankruptcy Code has been satisfied.  Those holders of Interests who did not object, or who

withdrew their objections, to the Sale are deemed to have consented pursuant to section 363(f)(2)

of the Bankruptcy Code.  Similarly, those non-Debtor parties to the Assumed Agreements who

did not object, or who withdrew their objections, to the assumption and assignment of the

Assumed Agreements are deemed to have consented to the extent that any such consent is

necessary pursuant to section 365(c) of the Bankruptcy Code.  The DIP Lender is adequately

protected because the net proceeds of the Sale attributable to assets on which the DIP Lender has

a first-priority lien shall, as provided in the order (the "DIP Order"), dated March 8, 2005,

approving the Debtors' postpetition secured financing (the "DIP Loan"), be applied to pay down

the DIP Loan (the "DIP Payment").  Any other holders of Interests are adequately protected by

having their Interests, if any, attach to the remaining cash proceeds of the Sale after the DIP

Payment (the "Remaining Cash Proceeds"), to the extent those remaining proceeds are

attributable to the property against or in which they claim an Interest, subject to the terms hereof.

     G.     Good and sufficient reasons for approval of the Purchase Agreement and the Sale

have been articulated.  The relief requested in the Motion is in the best interests of the Debtors,

their estates, their creditors and other parties in interest.

     H.     The Debtors have demonstrated both: (i) good, sufficient and sound business

purpose and justification; and (ii) compelling circumstances for the Sale other than in the

ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code, in that, among

other things, the immediate consummation of the Sale to the Purchaser is necessary and appropriate to maximize the value of the Debtors' estates; the Sale will permit the Silvestri division to continue operating as a going concern; and the Sale will provide the means for the Debtors to liquidate certain underperforming assets, maximize distributions to creditors, and will help facilitate the successful confirmation of a chapter 11 plan.

I.     The Seller has full corporate power and authority to execute the Purchase Agreement, and all other Transaction Agreements, and to consummate the Sale. The Purchase Agreement and all of the transactions contemplated thereby have been duly and validly authorized by all necessary corporate action of the Seller. No consents or approvals, other than the consent and approval of this Court and those expressly provided for in the Purchase Agreement, are required for the Seller to consummate the Sale.

J.     The Purchase Agreement was negotiated, proposed and entered into by the Seller and the Purchaser without collusion, in good faith and from arm's-length bargaining positions. The Purchaser is not an "insider" of any of the Debtors, as that term is defined in section 101 of the Bankruptcy Code. Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under section 363(n) of the Bankruptcy Code.

K.     The amendment to the Purchase Agreement attached hereto as Exhibit A sets forth certain amendments agreed to between the Debtors and the Purchaser which do not materially affect the Stalking Horse Bid.

L.     The Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby. The Purchaser will be

acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the transactions contemplated by the Purchase Agreement.

     M.    The consideration to be provided by the Purchaser pursuant to the Purchase Agreement: (i) is fair and reasonable; (ii) is the highest and best offer for the Acquired Assets; and (iii) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.

     N.    The Purchase Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.

     O.    The transfer of the Acquired Assets to the Purchaser pursuant to the Purchase Agreement will be a legal, valid and effective transfer of the Acquired Assets, and vests or will vest the Purchaser with all right, title and interest of the Seller to the Acquired Assets free and clear of liens, mortgages, security interests, conditional sales or other title retention agreements, pledges, claims, judgments, demands and encumbrances (including, without limitation, claims, and encumbrances: (i) that purport to give to any party a right or option to effect any forfeiture, modification or termination of the Seller's or the Purchaser's interests in the Acquired Assets; or (ii) in respect of taxes, restrictions, rights of first refusal, charges or interests of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership) (collectively, the "Liens"), with the exception of Permitted Liens (as defined in the Purchase Agreement), with all such non-assumed Liens, other than those of the DIP Lender that will be satisfied by the DIP Payment, to attach to

the Seller's interest in the Remaining Sale Proceeds in order of priority, subject to any rights, claims and defenses of the Debtors with respect thereto.

P.    Neither the Purchaser nor its affiliates, successors or assigns, as a result of any action taken in connection with the purchase of the Acquired Assets: (a) is a successor to the Debtors; (b) has, *de facto* or otherwise, merged with or into the Debtors; or (c) is a continuation or substantial continuation of the Debtors or any enterprise of the Debtors.

Q.    The Sale will enhance the Debtors' ability to confirm and consummate a plan of reorganization. The Sale is a sale in contemplation of a plan and, accordingly, is a transfer pursuant to section 1146(c) of the Bankruptcy Code, and is not subject to taxation under any law imposing a stamp tax, recording tax, transfer tax, or similar tax.

R.    The Debtors have demonstrated that assuming and assigning the Assumed Agreements in connection with the Sale is an exercise of their sound business judgment, and that such assumption and assignment is in the best interests of the Debtors' estates.

S.    The Assumed Agreements are in full force and effect and no monetary or non-monetary default exists thereunder, or event or occurrence which would constitute a default with the passage of time, giving of notice, or both, with respect to any material term, condition, covenant, payment obligation or other obligations thereunder, whether prepetition or postpetition in nature, on the part of any of the Debtors which otherwise would allow the contract counterparties to terminate, suspend performance, or modify the Assumed Agreements, other than any event of default existing as a result of the filing of these Bankruptcy Cases and monetary cure costs for which the Debtors have provided adequate assurance of cure of within the meaning of section 365(b)(1)(A) of the Bankruptcy Code (collectively, the "Cure Amounts").

T.      Promptly following the closing date of the Sale (the "Closing Date"), the Debtors

will pay in full all Cure Amounts in respect of undisputed cure claims and the undisputed portion

of any Cure Amount in respect of a disputed cure claim.  Parties that believe they have received

an inadequate Cure Amount from the Debtors shall have the right to petition the Court for

redress.

U.      The Debtors have, to the extent necessary, satisfied the requirements of sections

365(b)(1) and 365(f) of the Bankruptcy Code in connection with the Sale and the assumption and

assignment of the Assumed Agreements and, upon the assignment of the Assumed Agreements

on the Closing Date, shall be relieved from any liability for any breach thereof; and it is therefore

ORDERED, ADJUDGED AND DECREED THAT:

1.      The Motion is GRANTED (other than with respect to matters already addressed

by the Procedures Order).

2.      Any objections to the entry of this Order or the relief granted herein that have not

been withdrawn, waived or settled, and all reservations of rights included therein, hereby are

denied and overruled on the merits.

Approval of the Purchase Agreement

3.      The Purchase Agreement, as modified by the amendment attached as Exhibit A

hereto, and the other Transaction Agreements, and all of the terms and conditions thereof,

including, but not limited to, the sale of the Acquired Assets, the assumption of certain liabilities

(the "Assumed Liabilities") and the assumption and assignment of the Assumed Agreements,

hereby are approved.

4.      Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Debtors are

authorized and (subject to any applicable closing conditions set forth in the Purchase Agreement)

directed to consummate the Sale, pursuant to and in accordance with the terms and conditions of the Purchase Agreement.

5.    The Debtors are authorized and (subject to any applicable closing conditions set forth in the Purchase Agreement) directed to execute and deliver, and empowered to perform under, consummate and implement, the Transaction Agreements, collectively with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement, and to take all further actions as may be requested by the Purchaser for the purpose of transferring the Acquired Assets to the Purchaser or as may be necessary or appropriate to the performance of the obligations contemplated by the Purchase Agreement, including, without limitation, any post-Closing Date obligations of the Seller.  The Purchaser shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Transaction Agreements or any other Sale-related document; provided, however, that the Purchaser shall provide the Debtors with three business days' written notice before any such enforcement action.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence.

<u>Transfer of Acquired Assets</u>

6.    Except as expressly permitted or otherwise specifically provided for in the Purchase Agreement or this Order, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Acquired Assets shall be transferred to the Purchaser and, as of the Closing Date, shall be free and clear of all Liens and Interests, with the exception of Permitted Liens and Assumed Liabilities, with all such non-assumed Liens and Interests, other than those of the DIP Lender that will be satisfied by the DIP Payment, to attach to the Debtors' interest in the Remaining Sale

Proceeds, in the order of their priority, with the same validity, force and effect which they now have against the Acquired Assets, subject to any rights, claims and defenses the Debtors may possess with respect thereto.  The Debtors shall remit the DIP Payment to the DIP Lender in accordance with the terms of the DIP Order.

7.    Except as expressly permitted by the Purchase Agreement, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade and other creditors, holding Liens or Interests of any kind or nature whatsoever against or in the Debtors or the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets, the operation of the Debtors' businesses prior to the Closing Date or the transfer of the Acquired Assets to the Purchaser, shall be and hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing against the Purchaser, its property, its successors and assigns, its affiliates or the Acquired Assets, such persons' or entities' Liens or Interests (with the exception of Permitted Liens and Assumed Liabilities).  Following the Closing Date, no holder of an Interest in or Lien against the Debtors (other than holders of Permitted Liens or Assumed Liabilities) shall interfere with the Purchaser's title to or use and enjoyment of the Acquired Assets based on or related to such Liens or Interests, and all such Interests, if any and other than those of the DIP Lender that will be satisfied by the DIP Payment, shall be, and hereby are channeled, transferred and attached solely and exclusively to the Remaining Sale Proceeds.

8.     The transfer of the Acquired Assets to the Purchaser pursuant to the Purchase

Agreement shall not result in: (i) the Purchaser having any liability or responsibility for any

claim (other than for Permitted Liens or Assumed Liabilities) against the Debtors or against an

insider of the Debtors; or (ii) the Purchaser having any liability or responsibility to the Debtors

except pursuant to the Purchase Agreement, the Transaction Agreements and this Order.

9.     The Purchaser shall have no liability or responsibility for any liability or other

obligation of the Debtors arising under or related to the Acquired Assets other than as expressly

set forth in the Purchase Agreement.  Without limiting the effect or scope of the foregoing, the

transfer of the Acquired Assets from the Debtors to the Purchaser does not and will not subject

the Purchaser or its employees, officers, directors, advisors, affiliates, successors or assigns or

their respective properties (including the Acquired Assets) to any liability for claims (as that term

is defined in section 101(5) of the Bankruptcy Code) against the Debtors or the Acquired Assets

by reason of such transfer under the laws of the United States, any state, territory, possession or

the District of Columbia applicable to such transactions.  Neither the Purchaser nor its affiliates,

successors or assigns shall be deemed, as a result of any action taken in connection with the

purchase of the Acquired Assets to: (a) be a successor to the Debtors; (b) have, *de facto* or

otherwise, merged with or into the Debtors; or (c) be a continuation or substantial continuation of

the Debtors or any enterprise of the Debtors.  Neither the Purchaser nor its affiliates, successors

or assigns is acquiring or assuming any liability, warranty or other obligation of the Debtors,

including, without limitation, any tax incurred but unpaid by the Debtors prior to the Closing

Date, including, but not limited to, any tax, any fine or penalty relating to a tax, or any addition

to tax, whether or not previously assessed, fixed or audited, whether or not paid, and whether or

not contested before and adjudicated by a judicial or administrative tribunal of competent

jurisdiction, except as otherwise expressly provided in the Purchase Agreement.

10.    The transfer of the Acquired Assets to the Purchaser pursuant to the Purchase

Agreement constitutes a legal, valid and effective transfer of the Acquired Assets, and shall vest

the Purchaser with all right, title and interest of the Debtors in and to the Acquired Assets free

and clear of all Interests and Liens (other than Permitted Liens and Assumed Liabilities) of any

kind or nature whatsoever.

11.    On the Closing Date, this Order shall be construed and shall constitute for any and

all purposes a full and complete general assignment, conveyance and transfer of the Acquired

Assets (including, without limitation, the Assumed Leases) or a bill of sale transferring good and

marketable title in the Acquired Assets to the Purchaser. Each and every federal, state, and local

governmental agency or department is hereby directed to accept any and all documents and

instruments necessary and appropriate to consummate the transactions contemplated by the

Purchase Agreement.

12.    This Order is and shall be effective as a determination that, all Liens (other than

Permitted Liens) shall be, and are, without further action by any person or entity, released with

respect to the Acquired Assets as of the Closing Date.

13.    This Order shall be binding upon and shall govern the acts of all entities,

including, without limitation, all filing agents, filing officers, title agents, title companies,

recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies,

governmental departments, public utility commissions, secretaries of state, federal, state and

local officials, and all other persons and entities who may be required by operation of law, the

duties of their office, or contract, to accept, file, register or otherwise record or release any

documents or instruments, or who may be required to report or insure, or approve the transfer of, any title or state of title in or to any of the Acquired Assets.

<u>Assumption and Assignment of Assumed Agreements</u>

14.    The Debtors are authorized, in accordance with sections 105(a), 363 and 365 of the Bankruptcy Code, to: (a) assume and assign to the Purchaser, effective upon the Closing Date, the Assumed Agreements, and/or to transfer, sell and deliver to the Purchaser all of the Seller's right, title and interest in and to the Assumed Agreements, free and clear of all Liens and Interests of any kind or nature whatsoever; and (b) execute and deliver to the Purchaser such documents or other instruments as may be necessary or appropriate to assign and transfer the Assumed Agreements to the Purchaser.

15.    The requirements of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code hereby are deemed satisfied with respect to the Assumed Agreements (subject to the "cure amount" procedures set forth herein).

16.    The Assumed Agreements shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser, in accordance with their respective terms, notwithstanding any provision in any such Assumed Agreement (including provisions of the type described in sections 365(b)(2), (c)(1) and (f)(1) of the Bankruptcy Code) which prohibits, restricts or conditions such assignment or transfer. The non-debtor party to each Assumed Agreement shall be deemed to have consented to such assignment under section 365(c)(1)(B) of the Bankruptcy Code, and the Purchaser shall enjoy all of the rights and benefits under each such Assumed Agreement as of the Closing Date without the necessity of obtaining such non-debtor party's written consent to the assumption and assignment thereof.

17.     Pursuant to section 365(k) of the Bankruptcy Code, the Debtors and their estates shall be relieved from any liability for any breach of any Assumed Agreement after such assignment to and assumption by the Purchaser on the Closing Date.

18.     All liquidated monetary defaults, claims or other obligations of the Debtors arising or accruing under each Assumed Agreement prior to the assumption of such Assumed Agreement (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be promptly cured by the Debtors upon assumption and assignment as provided in section 365(b)(1) of the Bankruptcy Code.

19.     The Debtors shall pay all Cure Amounts no later than one business day after the Closing.  If a party believes it has received an insufficient Cure Amount from the Debtors it must notify the Debtors in writing within 30 days of the Closing (the "Cure Objection Deadline").  In the event that the Debtors are unable to resolve any disagreement regarding a Cure Amount, they shall promptly file a motion asking the Court to determine the Cure Amount.  Under no circumstance shall any party be entitled to receive any Cure Amount from the Purchaser, unless otherwise provided in the Transaction Agreements.  Within five (5) days of the Closing, the Debtors shall serve notice of the Cure Objection Deadline on the nondebtors parties to the Assumed Agreements.

20.     Subject to the terms hereof with respect to disputed Cure Amounts, all defaults or other obligations of the Debtors under the Assumed Agreements arising or accruing prior to the date of assignment have been cured or shall promptly be cured by the Debtors in accordance with the terms hereof such that the Purchaser shall have no liability or obligation with respect to any default or obligation arising or accruing under any Assumed Agreement prior to the assumption

date, except to the extent expressly provided in the Purchase Agreement. Each non-debtor party

to an Assumed Agreement is forever barred, estopped and permanently enjoined from asserting

against the Purchaser or its property or affiliates, or any thereof, any breach or default under any

Assumed Agreement, any claim of lack of consent relating to the assignment thereof, or any

counterclaim, defense, setoff, right of recoupment or any other matter arising prior to the date of

assignment for such Assumed Agreement or with regard to the assumption and assignment

thereof pursuant to the Purchase Agreement or this Order.

21.    Upon assignment of the Assumed Agreements to the Purchaser on the Closing

Date, no default shall exist under any Assumed Agreement and no non-debtor party to any

Assumed Agreement shall be permitted to declare a default by the Purchaser under such

Assumed Agreement or otherwise take action against the Purchaser as a result of any Debtor's

financial condition, bankruptcy or failure to perform any of its obligations under the Assumed

Agreement, including any failure to pay any amounts necessary to cure any Debtor's defaults

thereunder. Upon entry of this Order and assumption and assignment of the Assumed

Agreements, the Purchaser shall be deemed in compliance with all terms and provisions of the

Assumed Agreements.

Additional Provisions

22.    The consideration provided by the Purchaser for the Acquired Assets under the

Purchase Agreement is fair and reasonable and may not be avoided under section 363(n) of the

Bankruptcy Code.

23.    The transactions contemplated by the Purchase Agreement are undertaken by the

Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code and,

accordingly, the reversal or modification on appeal of the authorization provided herein to

consummate the Sale shall not affect the validity of the Sale to the Purchaser, unless such authorization is duly stayed pending such appeal. The Purchaser is a good-faith purchaser of the Acquired Assets, and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code.

24.     Pursuant to section 1146(c) of the Bankruptcy Code, no transaction contemplated by the Purchase Agreement shall be subject to taxation under any law imposing a stamp tax, recording tax, transfer tax, or similar tax.

25.     This Court retains jurisdiction to enforce and implement the terms and provisions of the Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith (including, but not limited to, the Transaction Agreements) in all respects, including, but not limited to, retaining jurisdiction to: (a) compel delivery of the Acquired Assets to the Purchaser; (b) compel assumption of the Assumed Liabilities by the Purchaser; (c) resolve any disputes arising under or related to the Purchase Agreement, except as otherwise provided therein, and (d) interpret, implement and enforce the provisions of this Sale Approval Order.

26.     All entities who are presently, or on the Closing Date may be, in possession of some or all of the Acquired Assets hereby are directed to surrender possession of the Acquired Assets either to: (i) the Debtors prior to the Closing Date, for subsequent transfer to the Purchaser on the Closing Date; or (ii) to the Purchaser on the Closing Date.

27.     On or before the Closing Date, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary or appropriate to release its Liens in the Acquired Assets, if any, as such Liens may have been recorded or would otherwise exist but for this Order.

28.    If any person or entity that has filed financing statements, mortgages, mechanic's

liens, *lis pendens* or other documents or agreements evidencing Liens with respect to the Debtors

and/or the Acquired Assets shall not have delivered to the Debtors and the Purchaser prior to the

Closing Date in proper form for filing and executed by the appropriate parties, termination

statements, instruments of satisfaction, releases of all Liens which the person or entity has with

respect to the Debtors and/or the Acquired Assets or otherwise, then: (i) the Debtors hereby are

authorized to execute and file such statements, instruments, releases and other documents on

behalf of the person or entity with respect to such assets and contracts; (ii) the Purchaser hereby

is authorized to file, register or otherwise record a certified copy of this Order, which, once filed,

registered or otherwise recorded, shall constitute conclusive evidence of the release of all Liens

in the Acquired Assets as of the Closing Date, of any kind or nature whatsoever (other than the

Permitted Liens); and (iii) the Debtors or the Purchaser may move this Court to compel against

any such non-cooperating person or entity to seek to compel the filing of any documents

necessary or appropriate to evidence the release of the relevant Liens pursuant to the terms of

this Order.

29.    Any amounts payable by the Seller pursuant to the Purchase Agreement or any of

the documents delivered by the Seller pursuant to or in connection with the Purchase Agreement

shall: (i) constitute administrative priority expenses of the Seller's estate pursuant to sections

503(b) and 507(a)(1) of the Bankruptcy Code, except as otherwise specifically provided in the

Purchase Agreement; (ii) be paid by the Seller in the time and manner provided in the Purchase

Agreement without further order of this Court; and (iii) not be discharged, modified or otherwise

affected by any plan of reorganization of the Seller.

30.    The terms and provisions of the Purchase Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estates, the Purchaser and its respective affiliates, successors and assigns, and any affected third parties, notwithstanding any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding.

31.    All persons who hold Liens against or Interests in (other than Permitted Liens and Assumed Liabilities) the Debtors are forever barred, estopped and permanently enjoined from asserting or prosecuting any claims or causes of action against the Purchaser, its affiliates, or any of its respective officers, directors, employees, attorneys or advisors, arising out of or in connection with the Sale.

32.    After the Closing Date, no person or entity, including, without limitation, any federal, state or local taxing authority, may: (a) attach or perfect a lien or security interest against any of the Acquired Assets on account of; or (b) collect or attempt to collect from the Purchaser or any of its affiliates, any tax (or other amount alleged to be owing by one or more of the Debtors) (i) for any period commencing before and concluding prior to or after the Closing Date, or (ii) assessed prior to and payable after the Closing Date, except as otherwise specifically provided in the Purchase Agreement.

33.    No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to any of the transactions under the Purchase Agreement.

34.    The Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement shall be filed with the

Court and all parties in interest shall have three business days to object prior to the effectiveness

of any such modification, amendment or supplement.

35.    Nothing contained in any chapter 11 plan confirmed in these cases or any order

confirming any such plan or in any other order in these cases (including any order entered after

any conversion of these cases to cases under chapter 7 of the Bankruptcy Code) shall alter,

conflict with, or derogate from, the provisions of the Purchase Agreement or this Order.

36.    The failure specifically to include any particular provisions of the Purchase

Agreement in this Order shall not diminish or impair the effectiveness of such provisions, it

being the intent of the Court that the Purchase Agreement be authorized and approved in its

entirety.  Likewise, all of the provisions of this Order are nonseverable and mutually dependent.

37.    Notwithstanding the provisions of Bankruptcy Rules 6004(g) and 6006(d), this

Order shall not be stayed for ten (10) days after the entry hereof, but shall be effective and

enforceable immediately upon issuance hereof.  Time is of the essence in closing the transactions

referenced herein and the Debtors and the Purchaser intend to close the Sale as soon as

practicable.  Therefore, any party objecting to this Order must exercise due diligence in filing an

appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

Dated:  Boston, Massachusetts

April 20, 2005

*Joan N. Feeney*

UNITED STATES BANKRUPTCY JUDGE

# **Exhibit A**

## AMENDMENT NO. 1 TO ASSET PURCHASE AGREEMENT

This Amendment No. 1 to Asset Purchase Agreement (the "Amendment") is entered into as of the 19th day of April 2005, by and between GIFT ACQUISITION, L.L.C., a Delaware limited liability company (the "Buyer"), and SYRATECH CORPORATION, a Delaware corporation (the "Seller"). The Buyer and the Seller are collectively referred to herein as the "Parties."

WHEREAS, the Parties have previously entered into that certain Asset Purchase Agreement dated as of March 24, 2005 (the "Agreement");

WHEREAS, the Parties desire to amend the Agreement as more fully set forth herein;

WHEREAS, the Agreement only may be amended with the mutual written consent of both the Buyer and the Seller and no provision may be waived unless in writing signed by the Person against whom enforcement is sought; and

NOW, THEREFORE, in consideration of the premises and the mutual promises herein made, and in consideration of the representations, warranties, and covenants herein contained, the Parties agree as follows:

1. Definitions. Any term used herein and not otherwise defined herein shall have the meaning ascribed to such term in the Agreement.

2. Amendment to Section 2.3 of the Agreement. Section 2.3 of the Agreement is hereby deleted in its entirety and replaced with the following:

"2.3 Assumption of Specified Liabilities. Upon the Closing, on the terms and subject to the conditions set forth herein, the Buyer will assume effective as of the Closing, and thereafter will pay, perform and discharge in accordance with their terms (as the same may be modified in connection with the Case), as and when due, the Assumed Liabilities. As used herein, the term "Assumed Liabilities" shall mean only the payment and performance obligations of the Seller arising and accruing on and after the Closing Date under: (i) the Assigned Contracts and Acquired Leases, (ii) any liabilities owed to third party vendors in respect of purchase order contracts listed in Section 2.3 of the Disclosure Schedule, (iii) liabilities for certain sales commissions as set forth in Section 2.5(f), and (iv) commissions and royalties due for sales solely with respect to the Acquired Assets that occurred between April 1, 2005 and the Closing. From and after the Closing Date, the Buyer shall reimburse the Seller for any claims against the Seller by the issuer of any Letter of Credit arising out of such Letters of Credit on or after the Closing Date."

3. Amendment to Section 2.5(d) of the Agreement. Section 2.5(d) of the Agreement is hereby deleted in its entirety and replaced with the following:

"(d) On April 4, 2005, the Buyer and the Seller jointly conducted test counts of the Inventory, including of the finished goods and Inventory in transit as of March 31, 2005 (the "Finished Goods Inventory"), but the Buyer reserves the right to conduct an additional audit within thirty (30) days after the Closing. The Cash Purchase Price will be subject to upward or

downward adjustment (the "Inventory Adjustment Amount") on a dollar-for-dollar basis to the extent the book value (before reserves) of the Finished Goods Inventory at the standard cost of the merchandise as reflected in the Seller's general ledger, as historically accounted for and as of March 31, 2005, is greater than or less than, respectively, $2,100,000, subject to a maximum upward adjustment of $200,000.  The cost of the Inventory count shall be borne by the Buyer."

4.  Amendment to Section 2.5(i) of the Agreement.  Section 2.5(i) of the Agreement is hereby deleted in its entirety and replaced with the following:

"(i)    During the period from the Execution Date until the final computation of the Cash Purchase Price in accordance with this Section 2.5, the Seller shall provide the Buyer with reasonable access during business hours in order for the Buyer to audit the Seller's computations of any adjustments to the Cash Purchase Price."

5.  Incorporation of Provisions of the Agreement.  All of the provisions of Section 11 of the Agreement, including all related definitions, are incorporated herein by reference to the same extent as if expressly stated herein.

6.  Effect of Amendment.  Except as otherwise set forth herein, the terms of the Agreement shall continue in full force and effect.

[ remainder of this page is intentionally left blank ]

- 2 -

IN WITNESS WHEREOF, the Parties hereto have executed this Amendment on the date first above written.

GIFT ACQUISITION, L.L.C.

By: _____
Name: Brandon Baer
Title: Authorized Signatory

SYRATECH CORPORATION

By: _____
Name: Gregory W. Abbott
Title: CFO